UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY BASS,

       Plaintiff,

v.

T-MOBILE USA, INC.,

       Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Troy Bass ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, states the following for his Complaint and Jury Demand against T-Mobile USA, Inc., ("Defendant"):

## INTRODUCTION

1. There is no pandemic exception to the protections afforded by Michigan's Elliot-Larsen Civil Rights Act of 1976 (the "ELCRA"), MCL 37.2101,

*et seq.* Defendant clearly did not seek to understand this when it denied Mr. Bass a religious exemption to its COVID-19 vaccine requirement, even though he already performed the majority of his work remotely prior to the mandate. Instead of engaging with Mr. Bass in the spirit of "bilateral cooperation," Defendant violated the ELCRA by baselessly terminating Mr. Bass due to alleged "undue hardship" when he had performed his job in exemplary fashion utilizing various safety measures during the pandemic.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in the City of Westland, County of Wayne, State of Michigan.

3. Defendant is a wireless communications company headquartered in the City of Bellevue, County of King, State of Washington.

4. Plaintiff's claims arise out of Defendant's violation of the Michigan Elliott-Larsen Civil Rights Act of 1976, MCL 37.2101, *et seq*.

5. This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Washington, and Plaintiff is now, and at all relevant times was, a citizen domiciled in the State of Michigan. Moreover, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(e), because it is the district in which Plaintiff resides. 28 U.S.C. § 1391(e).

7. Plaintiff filed charges of religious discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on March 23, 2022, and will amend his Complaint to allege federal discrimination claims under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000e, *et seq.*, once he receives a right to sue letter.

## FACTUAL ALLEGATIONS

### COVID-19 and Defendant's Vaccine Mandate

8. Defendant announced its vaccine mandate in September, 2021. The mandate required certain employees, including Plaintiff, to be become fully vaccinated against COVID-19.

9. Defendant's vaccine mandate expressly stated that religious and medical accommodations would be taken under consideration.

### Plaintiff's Employment and Religious Accommodation Request

10. Defendant hired Plaintiff on September 1, 2019, as a Small Business Account Representative.

11. Plaintiff seeks to make daily decisions, including his vaccination status and other medical decisions, through prayer and reading scripture.

12.     Plaintiff's sincerely held religious beliefs prevent him from receiving the COVID-19 vaccination.

13.     On September 3, 2021, after Defendant announced its COVID-19 vaccine mandate, Plaintiff submitted a Request for Religious Accommodation.

14.     Plaintiff's Request for Accommodation stated, in pertinent part:

> As a practicing Catholic, our faith requires each baptized Christian to use their conscience when making decisions. Created in God's image, we are endowed with an intellect, which is directed toward what is true, and a will, which is directed toward what is good. Although the Church does not oppose individuals from freely receiving the vaccine, the Church does oppose forcing individuals to take the vaccine.
>
> * * *
>
> Being created as a rational being by Almighty God, I believe that I have received the dignity and right to exercise such will according to my conscience. By mandating me to receive the vaccine, I believe that an impediment is being placed on the exercising of my free will in accordance with my intellect.

15.     In addition to his Request for Accommodation, Defendant required Plaintiff to complete a Religious Accommodation Questionnaire that contained fifteen questions, including questions about Plaintiff's over-the-counter medication use.

4

16. Notably, an employee's medicine use cannot be dispositive when evaluating the sincerity of his or her religious beliefs. See *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981).

17. Having received no response, Plaintiff emailed Defendant requesting an update to his Request for Accommodation on September 13, 2021.

18. In response, on September 14, 2021, Plaintiff received an email from the "Accommodations Team" stating "[t]hank you for submitting your religious accommodation request. We have reviewed your request and will get back to you *within the next few weeks* with a decision."

19. The September 14, 2021, email from Defendant's Accommodations Team presumes that no real interactive process would take place. Rather, Defendant's Accommodations Team would unilaterally reach a final decision regarding Plaintiff's Request for Accommodation.

20. The Accommodations Team did not, in fact, notify Plaintiff regarding its decision on his Request for Accommodation until five months later, on February 10, 2022, when Plaintiff's manager, Jake Mathers, verbally indicated to Plaintiff that his Request was denied.

21. After Plaintiff submitted his Request for Accommodation, Defendant subjected Plaintiff to a host of discriminatory comments in the workplace.

22. For example, Defendant's Sales Manager Jake Mathers told Plaintiff "Dude, just get jabbed."

23. Defendant's Senior Manager John LaPrise told Plaintiff "Man Up. Get jabbed. Keep your job."

24. Defendant's Account Manager Athil Sahhar asked Plaintiff "Why don't you get vaccinated?"

25. On February 8, 2022, Defendant's Religious Accommodations team emailed Mr. Mathers, and instructed him to communicate to Plaintiff that his Request for Accommodation had been denied. The email indicated that "the essential functions of [Plaintiff's] position prevent [Defendant] from granting working from home as an accommodation."

26. On February 10, 2022, the day Defendant verbally denied Plaintiff's Request for Accommodation, Defendant told Plaintiff that he would be terminated on April 2, 2022 if he did not get jabbed.

27. On February 11, 2022, Plaintiff learned that Defendant's managers had reached out to select employees who had also submitted Requests for Accommodation and offered those select employees temporary projects.

28. Defendant offered Plaintiff no such temporary project.

29. On February 14, 2022, Plaintiff emailed Defendant to complain about the discriminatory comments directed toward Plaintiff, as well as to indicate to

Defendant that "[Plaintiff] will consider T-Mobile to be a hostile employer using extortion and bully tactics to coerce employees into a medical procedure, and will consider actions against [Plaintiff] direct retaliation."

30. Defendant placed Plaintiff on unpaid leave on February 15, 2022.

31. On February 17, 2022, Plaintiff emailed Plaintiff's management, stating:

> "[h]aving worked my position remotely for almost 2 years, a reasonable accommodation would be to allow me to expense rapid COVID tests and provide the test results prior to my customer-facing appointments. I would like to offer this solution and resume my paid tenure and position at once. Please advise."

32. However, on February 18, 2022, Defendant indicated to Plaintiff that rapid testing would not be a suitable accommodation to the vaccine mandate without offering sufficient justification.

33. Also on February 18, 2022, Defendant spoke with Defendant's Human Resources Partner, Karly Lees, and indicated that several of Defendant's employees had harassed Plaintiff because he remained unvaccinated.

34. Although Defendant discussed these instances of harassment with Plaintiff, Defendant took no remedial action to discourage such comments.

35. With no discussion of possible accommodations, Plaintiff found himself in the horrible position of having to choose between faith and his job. See *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021) ("Forcing

individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion.").

36. Defendant ultimately terminated Plaintiff on April 2, 2022.

37. In the process of denying Plaintiff's Request for Accommodation, Defendant failed to sufficiently consider Plaintiff's proposed accommodations from the vaccine mandate.

38. Defendant did not supply Plaintiff with a satisfactory explanation for denying his Request for Accommodation, especially considering that Plaintiff had been working from home since the onset of the COVID-19 pandemic in early 2020.

39. The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.")

40. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process – a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

41. Defendant neither requested nor subjected that Plaintiff participate in any discussion to determine a fair and legal accommodation.

42. But for Plaintiff's refusal to vaccinate against COVID-19, Defendant would not have terminated Plaintiff.

43. "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . present[] a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume – holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

44. Defendant sabotaged the interactive process and evaded any sort of bilateral cooperation.

45. Defendant failed to adequately explain why it denied Plaintiff's Request for Accommodation.

46. Defendant has no "satisfactory explanation for its actions including a 'rational connection between the facts found and the choice made.'" *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

47. Plaintiff, a nearly fully remote employee for Defendant prior to his termination, posed very little risk to spread COVID-19 to Defendant's other employees.

48. Plaintiff attempted to engage in an interactive process with Defendant to explore alternate COVID-19 safeguards, however, Defendant denied Plaintiff of any sort of bilateral compromise.

49. With no substantive criteria to justify its denial of Plaintiff's request, Defendant effectively challenged Plaintiff's spirituality.

50. The sincerity of Plaintiff's religious beliefs is not open to question. *See Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v. Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question.")

51. Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j); *see also* 29 C.F.R. § 1605.1 ("In most cases whether or not a practice or belief is religious is not at issue . . . [R]eligious practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.")

52. An individual's testimony about his or her belief "must be given great weight" and is enough to show he has a *bona fide* religious belief. *See e.g.*, *Seeger*, 380 U.S. at 184 (1965) (When dealing "with the beliefs of different individuals who

10

will articulate them in a multitude of ways . . . the claim of the [party] that his [or her] belief is an essential part of a religious faith must be given great weight.")

53. Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible.'" *E.E.O.C. v. Alliant Techsystems, Inc.*, No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (*quoting Hobbie v. Unemployment Comm'n of Fla.*, 480 U.S. 136, 144 n. 9 (1987)).

54. There are no facts to suggest that Plaintiff lacks credibility.

55. The sincerity of Plaintiff's religious beliefs is further supported by his steadfast refusal to vaccinate against COVID-19 even after Defendant attempted to force Plaintiff to vaccinate himself to avoid losing his job.

## Defendant Violated EEOC Guidance

56. On March 1, 2021, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance"). This Guidance describes in greater detail the framework under which the EEOC advises employers to resolve religious accommodation requests. *See* Guidance, *supra*.

57. The EEOC emphasizes that as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a

11

social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be provided the opportunity to telework, or finally, accept a reassignment. *Id.* At K.2.

58. The EEOC states that an employer cannot rely on speculative hardships when faced with an employee's religious objection but, rather, should rely on objective information. *Id.* at L.3.

59. The EEOC states that, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship. *Id.* at K.12.

60. The EEOC instructs, "[i]f the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id.* at L.5.

61. "[T]he definition of religion is broad and protects beliefs, practices, and observances with which the employer may be unfamiliar." *Id.* at K.12.

62. "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id.* at L.2.

63. "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id.* at K.12.

64. "Employers should evaluate religious objections on an individual basis." *Id.* at L.2.

65. The EEOC states:

> An individual's beliefs – or degree of adherence – may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. An employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenants of the employee's religion, or because the employee adheres to some common practices but not others. *Id.* at L.2.

66. "An employer should thoroughly consider all possible reasonable accommodations." *Id.* at K.12.

67. The EEOC states that factors which could "undermine an employee's credibility include" the following:

    a. Whether the employee has acted in a manner inconsistent with the professed belief (although employee need not be scrupulous in their observance);

    b. Whether the accommodation sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons;

    c. Whether the timing of the request renders it suspect (for example, it follows an earlier request by the employee for the same benefit for secular reasons); and

13

      d.    Whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.

*Id.* at K.12.

68. In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id.* at L.3.

### Defendant Cannot Establish Undue Hardship

69. Pursuant to Title VII, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

70. "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

71. Defendant bears the burden to show "that it is unable to reasonably accommodate an employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978); *see also Baz v Walters*, 782 F.2d 701, 706 (7th Cir. 1986); *Redmond v, GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989).

72. In the instant case, Defendant cannot show undue hardship. To date, Defendant has provided insufficient reasoning as to why granting Plaintiff an accommodation poses an undue hardship.

73. Defendant has not explained its criteria for determining whether an accommodation poses an undue hardship.

74. An employer does not satisfy its burden "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).

75. Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiff individually, Defendant relies on hypothetical hardships by default.

76. "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Townley Eng'g & Mfg. Co.*, 859 F.2d at 615 (9th Cir. 1988).

77. "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection, but, rather, should rely on objective information." Guidance at L.3.

78. Defendant's actions demonstrate a motive to avoid granting religious accommodations. "[A]n employer who acts with the motive of avoiding

accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015).

## COUNT I
### Violation of the ELCRA, MCL 37.2101, *et seq.*
### Religious Discrimination

79. Plaintiff restates the foregoing paragraphs as set forth fully herein.

80. At al times relevant hereto, Plaintiff was an employee and Defendant was his employer for the purposes of MCL 37.2101 *et seq.*

81. Pursuant to ELCRA, MCL 37.2202(1), it is unlawful for an employer to "(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion[.]; or (b) Limit, segregate, or classify an employee of applicant for employment in a way that deprives or tends to deprive the employer or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion[.]"

82. Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

83. Simply by failing to adequately engage with Plaintiff about possible reasonable accommodations, Defendant has violated the law.

84. Plaintiff engaged in protected activity when he requested religious accommodations from Defendant's vaccine mandate.

85. Defendant discriminated against Plaintiff and terminated Plaintiff due to his sincerely held religious beliefs.

86. Plaintiff's religious beliefs and protected activity were the causes of Defendant's retaliation and adverse employment action.

87. This violation has harmed and continues to harm Plaintiff.

## COUNT II
### Violation of Elliot-Larsen Civil Rights Act ("ELCRA")
### Religious Discrimination – Retaliation

88. Plaintiff restates the foregoing paragraphs as set forth herein.

89. Two or more persons shall not conspire to, or an individual person shall not on his or her own, retaliate against a person because the person has opposed a violation of the Elliot-Larsen Civil Rights Act ("ELCRA"). MCL 37.2701(a).

90. Plaintiff can establish a *prima facie* case of retaliation by showing (1) that he engaged in a protected activity; (2) that this was known by the employer; (3) that the employer took an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

91. Plaintiff engaged in protected activity when he requested a religious accommodation to Defendant's vaccine mandate.

17

92. Defendant retaliated by suspending Plaintiff without pay, and ultimately by terminating Plaintiff on April 2, 2022.

93. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct.

94. Plaintiff has been denied employment and placed in financial distress and he has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and his ability to work because of the retaliatory conduct.

95. Plaintiff has been required to employ the services of an attorney.

96. Defendant's actions were intentional and/or reckless.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

A. Declare that Defendant has violated the ELCRA by failing to engage in the interactive process in response to Plaintiff's request for accommodation to the COVID-19 vaccine mandate.

B. Declare that Defendant has violated against the ELCRA by discriminating against Plaintiff by failing to provide reasonable accommodations to its COVID-19 vaccine mandate.

C. Declare that Defendant has violated the ELCRA by retaliating against Plaintiff for engaging in protected activity.

D. Award Plaintiff damages, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

E. Award Plaintiff reasonable attorneys' fees and costs.

F. Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: August 23, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY BASS,

      Plaintiff,

v.

T-MOBILE USA, INC.,

      Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

    Plaintiff, Troy Bass, by and through his attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                          Respectfully Submitted,
                                          HURWITZ LAW PLLC

                                          */s/ Noah S. Hurwitz*
                                          Noah S. Hurwitz (P74063)
                                          *Attorney for Plaintiff*

Dated August 23, 2022