UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY BASS,

       Plaintiff,

v.                                          Case No. 22-11975

T-MOBILE USA, INC.,                         Sean F. Cox
                                            United States District Court Judge
       Defendant.

_____/

**<u>OPINION & ORDER</u>**
**<u>GRANTING IN PART AND DENYING PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT</u>**

       Plaintiff Troy Bass filed this discrimination suit against Defendant T-Mobile USA, Inc.,

under Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act

of 1976 ("ELCRA"). The matters currently before the Court are Plaintiff's Motion for Partial

Summary Judgment and Defendant's Motion for Summary Judgment, both brought pursuant to

Fed. R. Civ. P. 56. Both motions have been fully briefed. Pursuant to E.D. Mich. LR 7.1 (f)(2), the

Court finds this Motion has been adequately briefed and will rule without hearing.

       For the reasons set forth below, the Court**:**

-    **DENIES** T-Mobile's Motion for Summary Judgment as to Count I;

-    **DENIES** Plaintiff's Motion for Partial Summary Judgment as to Count I;

-    **GRANTS** T-Mobile's Motion for Summary Judgment as to Counts II, III, and IV.

Plaintiff's claim as to Count I shall therefore proceed to a jury trial.

## BACKGROUND

Plaintiff filed suit against T-Mobile on August 23, 2022. (ECF No. 1). On December 13, 2022, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 8). The FAC contains four counts:

> 1.    Violation of Title VII, 42 U.S.C. § 2000e, *et seq*., Religious Discrimination—Failure to Accommodate (Count I)
>
> 2.    Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, Religious Discrimination—Retaliation (Count II)
>
> 3.    Violation of ELCRA, MCL 37.2101, *et seq.*, Religious Discrimination—Failure to Accommodate (Count III)
>
> 4.    Violation of ELCRA, MCL 37.2101, *et seq.*, Religious Discrimination—Retaliation (Count IV)

(ECF No. 8, PageID.66–72).

Discovery has closed and the parties have filed cross-motions for summary and partial summary judgment. This Court's practice guidelines provide, consistent with Fed. R. Civ. P. 56 (c) and (e) that:

> a. The moving party's papers shall include a separate document entitled **Statement of Material Facts Not in Dispute**. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled **Counter-Statement of Disputed Facts**. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(ECF No. 16, PageID.117–18).  Both parties complied with the Court's practice guidelines for summary judgment motions such that their motions include a "Statement of Material Facts Not In Dispute" (ECF No. 37-1 and 36-2) and a "Counter-Statement of Disputed Facts" (ECF No. 38-6 and 39-1).

The relevant evidence submitted by the parties – construed in the light most favorable to the moving party – is as follows.[1]

T-Mobile USA, Inc., ("T-Mobile") hired Troy Bass, ("Plaintiff") as an "Account Executive, Business Sales" on September 1, 2019. (ECF No. 36-2, PageID.739; ECF No. 36-8, PageID.1398). His duties included meeting in person with customers and prospective business customers. (ECF No. 37-1, PageID.856; ECF No. 39-1, PageID.1451). While Plaintiff could also meet with customers virtually (ECF No. 37-1, PageID.856; ECF No. 39-1, PageID.1451), one important way Plaintiff could increase his sales activity was via "door pulling" i.e. arriving at a business unannounced and attempting to meet with decisionmakers in an attempt to sell T-Mobile's business services to them. (ECF No. 37-1, PageID.856; ECF No. 39-1, PageID.1451). Plaintiff stated he was most effective at "door pulling" in person. (ECF No. 37-1, PageID.856; ECF No. 39-1, PageID.1451).

Prior to the start of the COVID-19 pandemic, Plaintiff was supposed to be in the office at least two days per week, and the remainder of the time was expected to be out in the field meeting with customers, "door pulling" or prospecting. (ECF No. 37, PageID.836; ECF No. 36-12,

---

[1] There is a good deal of conflicting testimony.  For example, the parties present differing accounts of Plaintiff's performance leading up to his termination. Plaintiff claims he received a performance award for the first quarter of 2021 for his sales performance (ECF No. 36-5; ECF No. 36-2, PageID.739), in May 2020 and October 2021. However, T-Mobile claims that Plaintiff's managers held performance discussions with Plaintiff because "he was not meeting expectations" and "had not met quota the previous two months or met key performance activity goals." (ECF No. 37, PageID.837; ECF No. 37-1, PageID.857). Of note, many of Defendant T-Mobile's denials of Plaintiff's Statements of fact only point out that Plaintiff's quotation was pulled from a larger quoted statement and do not change that the quoted statement is correct.

PageID.786; ECF No. 37-1, PageID.857; ECF No. 39-1, PageID.1451). However, when the COVID-19 pandemic began in 2020, T-Mobile's employees transitioned to working fully remotely. (ECF No. 36-4, PageID.753; ECF No. 36, PageID.716; ECF No. 36-2, PageID.739; ECF No. 38-6, PageID.1399).

### Vaccination Requirement

On August 31, 2021, T-Mobile announced that "effective tomorrow, we are moving toward Covid-19 vaccinated-only office spaces for all our badge-controlled office locations nationwide…" (ECF No. 36-2, PageID.739; ECF No. 38-6, PageID.1399–40). The announcement stated that its intended return to work date was September 20, 2021, with a "required return-to-office date" of October 25, 2021. (ECF No. 36-2, PageID.739; ECF No. 38-6, PageID.1399–40). The announcement also stated that the "vaccine-only workspace policy does not apply to public accessible spaces such as our retail stores, where we will continue to require masks for employees and visitors" and that for any employees "not in a position to return regularly to [T-Mobile's] fully-vaccinated office spaces, there will be a process for you to request a short-term or longer-term remote work accommodation." (ECF No. 36-6, PageID.765; ECF No. 36-2, PageID.739–40; ECF No. 38-6, PageID.1400–01). Plaintiff subsequently filed a Request for Accommodation.

### Religious Accommodation Request and Temporary Granting

On September 3, 2021, Plaintiff submitted a religious accommodation requesting to be exempt from T-Mobile's vaccine mandate. (ECF No. 36, PageID.717; ECF No. 36-2, PageID.741; ECF No. 38-6, PageID.1403).

In this "Request for Accommodation of Sincerely Held Religious Belief," Plaintiff stated that his "religious belief, practice, or observance lead [him] to object to…all vaccinations…[and] the COVID-19 vaccination." (ECF No. 36-9, PageID.775; ECF No. 36-2, PageID.741; ECF No.

37-1, PageID.859). Plaintiff also stated that his religious belief was that he had the right to exercise his free will in accordance with his intellect, and that his faith, Catholicism, "oppose[s] forcing individuals to take the vaccine." (ECF No. 36-9, PageID.777; ECF No. 36-2, PageID.741; ECF No. 37-1, PageID.859). Later, at his deposition, Plaintiff also stated that he objected to the COVID-19 vaccine because it was "derived from human fetal tissue." (ECF No. 39-11, PageID.1504). Plaintiff admits he did not inform T-Mobile of his latter rationale. (ECF No. 37-3, PageID.905).

On October 12, 2021, T-Mobile notified its employees that all "employees working in our badge-secured locations...will need proof of vaccination" by Thursday, October 21, 2021. (ECF No. 36-2, PageID.740; ECF No. 38-6, PageID.1401).

However, on October 22, 2021, T-Mobile granted Plaintiff a "return-to-office" exception until January 1, 2022. (ECF No. 36-2, PageID.742; ECF No. 38-6, PageID.1403; ECF No. 39-10, PageID.1498). Plaintiff understood that his exception to the requirement was only temporary and had an expiration date of January 1, 2022. (ECF No. 37, PageID.839; ECF No. 37-1, PageID.859; ECF No. 39-1, PageID.1452).

On December 22, 2021, T-Mobile also informed employees that "going forward, vaccination will be a job requirement for customer-facing roles within our business group" and that the policy was "not only safer...it is critical to your ability to successfully do our jobs." (ECF No. 36, PageID.717; ECF No. 36-2, PageID.741; ECF No. 38-6, PageID.1403). Defendant also extended the deadline to be fully vaccinated to February 15, 2022. (ECF No. 36-2, PageID.741; ECF No. 38-6, PageID.1403). Further, "[e]mployees who have not sought medical or religious accommodation or exception and who do not comply with the requirement will be placed on unpaid leave on that date." (ECF No. 36-8, PageID.771; ECF No. 36-2, PageID.741; ECF No. 38-6, PageID.1403).

On December 23, 2021, T-Mobile informed Plaintiff that if he was not fully vaccinated and able to return to the office on February 15, 2021, he would be placed on unpaid leave and, if still not vaccinated by April 2, 2022, he would then be separated from employment. (ECF No. 37, PageID.839; ECF No. 37-1, PageID.859–60; ECF No. 39-1, PageID.1452).

### *Alleged Offers of Accommodation*

It is here that the parties' characterization of the events begins to differ. On February 10, 2022, Plaintiff's manager, Jake Mathers, reminded Plaintiff that he was no longer approved for an exemption and would be placed on suspension if he was not vaccinated by the deadline. (ECF No. 37, PageID.840; ECF No. 37-1, PageID.860; ECF No. 39-1, PageID.1452). During that conversation, T-Mobile claims Mathers offered Plaintiff the possibility of another position. (ECF No. 37, PageID.840; ECF No. 37-1, PageID.860; ECF No. 39-1, PageID.1452).

John LaPrise, Plaintiff's "Senior Manager and longtime friend", claims he also offered Plaintiff a role that was remote and would not require vaccination. (ECF No. 37, PageID.840; ECF No. 39, PageID.1429; ECF No. 37-1, PageID.860). The position was a lateral transfer, and the total targeted compensation was identical to the position Plaintiff held. (ECF No. 37, PageID.840; ECF No. 37-1, PageID.860).

While Plaintiff claims these were not actual "offers" because they were posed as hypotheticals and were not made in writing, Plaintiff also admits that he turned these "offers" down. (ECF No. 37-3, PageID.917; ECF No. 39, PageID.1435–36; ECF No. 39-1, PageID.1452–53).

Two of Plaintiff's co-workers who also requested an exemption to the vaccine requirement were also offered this alternative role. (ECF No. 37, PageID.840; ECF No. 37-1, PageID.860; ECF No. 39-1, PageID.1453). Both accepted it. (*Id.*) One of these co-workers asked Plaintiff if he was

interested in the position, since they were looking for a few more people to fill the role. (*Id.*) Plaintiff responded no. (*Id.*)

Plaintiff continued to refuse to be vaccinated. (ECF No. 37, PageID.840; ECF No. 36-12, PageID.789). On February 15, 2022, Plaintiff was placed on unpaid leave and on April 2, 2022, Plaintiff was separated from his employment with T-Mobile. (*Id.*; ECF No. 36-2, PageID.744; ECF No. 37-1, PageID.861).

## STANDARD OF DECISION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

The standards upon which courts evaluate motions for summary judgment do not change when "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id*. (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)); *See also Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021).

## ANALYSIS

T-Mobile's motion addresses two primary issues: (1) Religious Discrimination – Failure to Accommodate under Title VII (Count I) and Michigan's ELCRA (Count III); and (2) Religious Discrimination – Retaliation (Counts II and IV).

Plaintiff's motion only addresses Religious Discrimination – Failure to Accommodate under Title VII (Count I).

### I.     Religious Discrimination – Failure to Accommodate (Counts I and III)

Plaintiff's Complaint alleges two counts of "Religious Discrimination – Failure to Accommodate" under Title VII for (Count I) and under Michigan's ELCRA (Count III).

#### a.   Title VII (Count I)

Both Plaintiff and T-Mobile address Count I in their respective motions. Under Title VII, a plaintiff must establish that: (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement. *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). If a plaintiff can establish a *prima facie* case, the burden shifts to the employer to demonstrate either that it reasonably accommodated the employee, or that it was unable to do so without undue hardship. *Id.*

Here, T-Mobile argues that Plaintiff cannot establish the first two elements[2]. (ECF No. 37, PageID.842).

---

[2] The parties do not contest that Plaintiff was discharged for failing to comply with the conflicting employment requirement—namely, getting the COVID-19 vaccine.

8

Plaintiff disagrees. He argues he meets all the elements to establish a *prima facie* case, and that the burden shifts to T-Mobile to demonstrate that it either (a) reasonably accommodated the employee, or (b) that it was unable to do so without undue hardship. Plaintiff argues T-Mobile cannot meet either burden.

T-Mobile counters that it did provide a reasonable accommodation to Plaintiff, but that he turned down the accommodation.

### i.  Sincerely Held Religious Belief

First, T-Mobile argues Plaintiff cannot establish that he held a sincere religious belief that conflicted with any of the employer, T-Mobile's, requirements. (ECF No. 37, PageID.842). Plaintiff disagrees.

It is undisputed that T-Mobile implemented a vaccine requirement for certain employees, including Plaintiff. (ECF No. 36, PageID.716; ECF No. 37, PageID.837). However, the parties appear to disagree as to whether Plaintiff had a sincerely held religious belief that conflicted with this requirement.

Plaintiff argues that he established that he held a sincere religious belief.  (ECF No. 39, PageID.1430). Plaintiff argues that he "based his refusal to receive the COVID-19 vaccine…on his Catholic religion, that humans are made in God's image, and the use of aborted fetal cell tissue". (ECF No. 39, PageID.1433). Plaintiff also argues that because T-Mobile initially granted, and later withdrew, Plaintiff's accommodation request, all without challenging Plaintiff's religious beliefs, that there is no evidence T-Mobile doubted the sincerity of Plaintiff's religious beliefs regarding the vaccine. (ECF No. 39, PageID.1433).  In other words, Plaintiff appears to imply that because T-Mobile did not question the religious foundation for Plaintiff's beliefs when granting the initial, temporary accommodation request, that this equates to T-Mobile conceding the issue.

Plaintiff also cites deposition testimony from his "Senior Manager and longtime friend", John LaPrise, who testified that he had no reason to doubt the sincerity of Plaintiff's religious beliefs. (ECF No. 39, PageID.1429; ECF No. 36-4, PageID.757). Further, Plaintiff argues that if there is any question as to the sincerity of Plaintiff's religious beliefs, these are factual issues for a jury to decide[3]. (ECF No. 39, PageID.1430).

T-Mobile disagrees. T-Mobile argues that "Courts have repeatedly found that similar stated beliefs fail as a matter of law, even when couched in religious terms." (ECF No. 37, PageID.843). Further, T-Mobile argues the belief Plaintiff asserts in his Request for Accommodation "is akin to 'a blanket privilege…for avoiding all unwanted obligations,' which warrants summary judgment." *Blackwell v. Lehigh Valley Health* Network, No. 5:22-CV-03360-JMG, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) (internal citations omitted). (ECF No. 37, PageID.846). T-Mobile also argues that Plaintiff's arguments regarding "his opinion that the vaccine contains human fetal cells" should not be considered by this Court because "Plaintiff admits he did not inform T-Mobile" of this now-asserted opinion. (ECF No. 37, PageID.842).

Neither Plaintiff nor T-Mobile cite any binding case law to support these claims.[4]

Here, the Court finds Plaintiff has sufficiently alleged that he holds a sincere religious belief that conflicted with his employer's requirement. Plaintiff clearly stated in his September 3, 2021, accommodation request, that he was against receiving the COVID-19 vaccine because:

---

[3] "'[J]udging the sincerity of a person's religious beliefs is a quintessential fact question' which is the domain of the jury." *Sturgill v. Am. Red Cross*, No. 22-CV-11837, 2023 WL 8701293, at *5 (E.D. Mich. Dec. 15, 2023) (citing *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 700 (M.D. Tenn. 2020)).

[4] Neither party cites any Supreme Court or Sixth Circuit case law to support this claim. T-Mobile cites only persuasive cases. E.g. "Plaintiff's assertion of a 'God given right to make her own choices'…would amount to a blanket privilege and a limitless excuse for avoiding all obligations." *Kiel v. Mayo Clinic Health System Southeast Minn.*, No. 22-1319, 2023 U.S. Dist. LEXIS 135595, at *25-27 (D.Minn. Aug. 4, 2023). "Ultimately, beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, event where religion is expressly invoked in communicating the beliefs" *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 U.S. Dist. LEXIS 64750, at *12 (E.D. Pa. Apr. 13, 2023).

1. His "religious belief, practice, or observance lead [him] to object to…all vaccinations…[and] the COVID-19 vaccination";

2. His religious belief was that he had the right to exercise his free will in accordance with his intellect; and

3. His faith, Catholicism, "oppose[s] forcing individuals to take the vaccine."

(ECF No. 36-9, PageID.777). Regardless of whether the Court considers Plaintiff's belief "that the vaccine contains human fetal cells" the Court's determination would remain the same.

"[C]ourts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Emp. Div. Dep't of Hum. Res. Of Or. V. Smith*, 494 U.S. 872, 887 (1990). It is not the Court's role to question the religious validity of sincerely-held beliefs, including in the context of claims of religious discrimination in violation of Title VII[5]. *See United States v. Seeger*, 380 U.S. 163, 184, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 901 (S.D. Ohio 2017) ("In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight....The validity of what he believes cannot be questioned.").

This Court finds Plaintiff's accommodation request to be sufficient to show he had a sincerely held religious belief, (i.e. that he "to object[ed] to…all vaccinations and the COVID-19 vaccination") and that this belief conflicted with an employment requirement (namely, T-Mobile's COVID-19 vaccination requirement). (ECF No. 36-9, PageID.775, 777). Plaintiff therefore meets the first element.

---

[5] In fact, the Equal Employment Opportunity Commission ("EEOC")—the agency charged with the administration, interpretation, and enforcement of Title VII—states that "in most cases, whether or not a practice or belief is religious is not an issue. Religious Discrimination and Accommodation in the Federal Workplace, EEOC, (Feb. 2, 2024), https://www.dol.gov/agencies/oasam/civil-rights-center/internal/policies/religious-discrimination-accommodation#:~:text=Religious%20Accommodation,would%20create%20an%20undue%20hardship.

### ii. Informing Employer of Conflict

Next, T-Mobile addresses whether Plaintiff informed his employer—T-Mobile—of the conflict. Specifically, T-Mobile addresses Plaintiff's claim that the vaccine contains human fetal cells as reason why he opposes the vaccine. (ECF No. 37-3, PageID.877). Absent any evidence Plaintiff informed employer of his belief, T-Mobile argues the Court should not consider his belief regarding human fetal cells. (ECF No. 37, PageID.842).

Plaintiff's only argument in response is that Plaintiff submitted his religious accommodation request on September 3, 2021. (ECF No. 39, PageID.1428; ECF No. 36, PageID.729).

Here, the Court finds that Plaintiff informed his employer of the conflict. The Court makes this determination regardless of whether T-Mobile was aware of Plaintiff's belief that the vaccine contained human fetal cells (and was opposed to the COVID-19 vaccine on that basis). Plaintiff may not have informed T-Mobile of the entirety of his rationale for opposing the vaccine, but Plaintiff did inform T-Mobile of a conflict and the religious basis of the conflict in his accommodation request.

Plaintiff therefore meets the second element. The parties do not contest the third element. Plaintiff has therefore established a *prima facie* case. The burden now shifts to T-Mobile.

### iii. Reasonable accommodation or unable to accommodate without undue hardship

Once Plaintiff establishes a *prima facie* case, the burden shifts to T-Mobile to demonstrate either that it reasonably accommodated the employee, or that it was unable to do so without undue hardship. *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007).

Title VII places the affirmative duty to reasonably accommodate on the employer. *Crider v. Univ. of Tennessee, Knoxville*, 492 F. App'x 609, 612 (6th Cir. 2012) (citing *Draper v. United*

12

*States Pipe and Foundry Co.*, 527 F.2d 515, 519–520 (6th Cir.1975)). An employer meets its obligation under Title VII when it demonstrates that it has offered a reasonable accommodation to the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S. Ct. 367, 372, 93 L. Ed. 2d 305 (1986). "[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Id.* at 68. When the employer demonstrates such a reasonable accommodation was offered, the employer need not show that alternative accommodations would result in undue hardship. *Id.*

Employees are expected to "make some effort to cooperate with an employer's attempt at accommodation." *Crider*, 492 F. App'x at 612. The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court. *E.E.O.C. v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006).

Here, the Court finds T-Mobile has not met its burden to prove it offered Plaintiff a reasonable accommodation.

T-Mobile made at least two offers to Plaintiff for an accommodation. (ECF No. 37, PageID.840). Plaintiff refused both offers[6]. (*Id.*) T-Mobile argues the offers were "reasonable" accommodations because they were for "a remote position that did not require vaccination and that was a lateral move with the same total targeted compensation." (ECF No. 37, PageID.846; ECF No. 37-3, PageID.917–20, 928–29).

Plaintiff disagrees. He argues there were no "offers" because he requested that any offers be made in writing—which he never received. (ECF No. 39, PageID.1434–35). Further, even if these were "offers", they were not "reasonable" because they would have forced Plaintiff "to lose

---

[6] Plaintiff admits in his deposition that he turned down these offers. (ECF No. 39-11, PageID.1509–10).

a benefit 'enjoyed by all other employees without a religious conflict' had he transferred into a new position. *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994)." (ECF No. 39, PageID.1436). Namely, Plaintiff would have been forced to lose his commission pay structure for a "bonus structure" which Plaintiff claims would have resulted in lower compensation. (ECF No. 39, PageID.1437). Plaintiff provides no evidence to support the latter contention.

Finally, Plaintiff states that the job he was offered would only last for six months. (ECF No. 39-3, PageID.1474). (ECF No. 39, PageID.1437). He argues such a "temporary" position is not a reasonable accommodation for a permanent position. (ECF No. 39, PageID.1437).

Plaintiff also states that had T-Mobile allowed him to continue to work remotely—as they did during the temporary granting of his accommodation request and for other employees—that would have constituted a reasonable accommodation.  (ECF No. 36, PageID.716).

Here, the Court finds that T-Mobile has not met its burden to show that it provided a reasonable accommodation to Plaintiff. As stated above, the reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court. *E.E.O.C.*, 169 F. App'x 942, 944 (6th Cir. 2006). Here, several questions of fact remain, including: whether Plaintiff would have lost a benefit by accepting the accommodation (i.e., the difference in pay between the positions); the "temporary" nature of the position; and ultimately whether the accommodation was "reasonable" based upon these findings. The Court must therefore proceed to the undue hardship element.

Under Title VII, employers are not required to accommodate employees if doing so would impose an undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). In determining whether an undue hardship exists, courts must apply the test in a manner that considers all relevant factors in

the case at hand, including the particular accommodations at issue and their practical impact. *Id.* at 470–71.  An "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468, 143 S. Ct. 2279, 2294, 216 L. Ed. 2d 1041 (2023).

In his motion for Partial Summary Judgment, Plaintiff first argues that T-Mobile's temporary granting of his accommodation request and allowing him to work remotely shows that allowing him to work remotely was not an undue hardship. (ECF No. 36, PageID.723). In the eventual denial of his accommodation request, T-Mobile stated that "the essential functions of [Plaintiff's] position prevent us from granting working from home as an accommodation." (ECF No. 36, PageID.724). Further, Plaintiff argues that because T-Mobile (a) did not require employees in other positions to get the COVID-19 vaccine; and (b) allowed all employees residing more than 50 miles from the office to work remotely—but did not allow Plaintiff these accommodations— that "no reasonable juror could believe that accommodating Plaintiff" in the same manner "would have caused Defendant to suffer substantial hardship." (ECF No. 36, PageID.726).

T-Mobile makes no argument in its Motion for Summary Judgment that accommodating Plaintiff would create an undue hardship.  However, it *does* make arguments regarding the undue hardship element in its Response to Plaintiff's Motion for Partial Summary Judgment. (ECF No. 38, PageID.1301).

First, T-Mobile disagrees with Plaintiff's contention that because it allowed retail employees to go to work unvaccinated, it could not establish a question of fact on the issue of undue hardship. (ECF No. 38, PageID.1304–05). T-Mobile notes that retail employees work in a store where customers choose to go, and where T-Mobile could not control who goes in and out of the store. (*Id.*) In the retail space, T-Mobile could not control the vaccination status of the public.

(*Id.*) Because of that inability, T-Mobile required both employees and customers to wear masks. (*Id.*)

Plaintiff's job, on the other hand, "required him to go to customers, to enter ***their*** buildings, which may prohibit unvaccinated individuals, and where T-Mobile could not require individuals with whom Plaintiff was meeting to wear masks." (ECF No. 38, PageID.1305). In other words, T-Mobile could not control the vaccination or masking status of customers at customers' offices. Plaintiff could potentially be putting customers at risk by entering those buildings unvaccinated. (ECF No. 38, PageID.1304–05). However, T-Mobile *could* control customers entering T-Mobile retail locations via mask requirements. Therefore, when it came to Plaintiff and his position going to customers' offices, T-Mobile *could* control and mitigate the risk Plaintiff posed to customers via a vaccine requirement.

Second, T-Mobile argues that Plaintiff has not asserted that the business executives who were permitted to work remotely were not required to be vaccinated. (ECF No. 38, PageID.1307). In fact, business executives were allowed to work remotely, but they were still required to meet in person with customers. (ECF No. 38, PageID.1307). That others were granted those accommodations or the ability to work remotely does not mean it was not an undue burden to grant the same accommodation Plaintiff. In other words, Plaintiff has not shown that those employees were granted an accommodation that included no vaccination requirement, and thus has not shown that these employees were similarly situated.

Third, during deposition testimony, (1) John LaPrise testified that business was down in his group when his employees tried to connect with customers virtually (ECF No. 38, PageID.1307; ECF No. 36-4, PageID.753–54); (2) that account executives were more successful in person with their customers (ECF No. 38, PageID.1307; ECF No. 36-4, PageID.753–54); and

(3) Plaintiff himself admitted he was better at his job when he could meet with customers in person. (ECF No. 37-3, PageID.873).

The Court finds T-Mobile's argument more persuasive. However, because T-Mobile failed to address these arguments in its own Motion for Summary Judgment, the Court cannot grant summary judgment in T-Mobile's favor and will therefore DENY T-Mobile's Motion for Summary Judgment as to Count I. However, the Court will also DENY Plaintiff's Motion for Partial Summary Judgment as to Count I based on the arguments in T-Mobile's response.

Plaintiff admitted, and his manager agreed, that he was not as effective at his job working remotely. Further, while other employees may have been permitted to work remotely, those employees were not working in the same position as Plaintiff. Plaintiff's claims that other employees were granted an accommodation—particularly those who were not similarly situated—does not show that it was not an undue burden for T-Mobile to accommodate Plaintiff.

Therefore, the Court finds T-Mobile has provided sufficient evidence to show a question of fact remains regarding whether T-Mobile reasonably accommodated Plaintiff, and whether accommodating Plaintiff would pose an undue hardship on T-Mobile.

Defendant's Motion for Summary Judgment as to Count I is therefore DENIED and Plaintiff's Motion for Partial Summary Judgment is also DENIED as to Count I.

### b. ELCRA (Count III)

Next, in its motion for summary judgment, T-Mobile makes two arguments as to why summary judgment should be granted as to Plaintiff's Religious Discrimination – Accommodation claim under the ELCRA (Count III): (1) Michigan's ELCRA does not require religious accommodation (ECF No. 37, PageID.846); and (2) Plaintiff has not established a religious discrimination claim. (ECF No. 37, PageID.848).

First, T-Mobile argues the ELCRA does not require accommodation for religious beliefs, meaning there is no such claim for Plaintiff to make. (ECF No. 37, PageID.846). In support of its argument, T-Mobile cites several decisions from this District, as recently as 2023, holding there is no claim for a denied religious accommodation under the ELCRA. *Lively v. Kroger Co.*, No. 19-12961, 2021 U.S. Dist. LEXIS 38060, at *12-13 (E.D. Mich., Mar. 2, 2021) (citing *Ereche v. Home Depot U.S.A., Inc.*, No. 2:06-CV-11017, 2006 WL 3825070, at *3 (E.D. Mich. Dec. 26, 2006) (Cox, J.)). (ECF No. 37, PageID.847).

Plaintiff attempts to argue that these cases all reference one case, *Ureche*, which it claims only addresses the duty to accommodate an employee's sincerely held religious beliefs under the Fair Employment Practices Act ("FEPA"), the ELCRA's predecessor. This is false.

*Ureche* explicitly analyzed its holding under the ELCRA. ("…[t]he Court does not believe that the ELCRA can be construed as imposing a duty to accommodate. Like the language of the FEPA, the ELCRA contains no terms requiring such a duty, but rather just contains a general ban on discrimination based on religion." *Ureche v. Home Depot U.S.A., Inc.*, No. 2:06CV11017, 2006 WL 3825070, at *3 (E.D. Mich. Dec. 26, 2006).) Further, the plain language of the statute provides that an employer shall not "…discharge or otherwise discriminate against an individual with respect to employment, compensation or a term, condition, or privilege of employment, because of religion…" MCL § 37.2202(1)(1). [7]

In other words, this Court agrees with T-Mobile that the ELCRA does not require religious accommodation.

---

[7] Plaintiff attempts to convert this duty to accommodate claim into its religious discrimination claim (Count IV). The Court will address this below under along with the remainder of Count IV.

Accordingly, Plaintiff's claim as to Count III fails as a matter of law. The Court therefore GRANTS T-Mobile's Motion for Summary Judgment as to Count III.

## II.      Retaliation (Counts II and IV)

To establish a *prima facie* case of retaliation under Title VII (Count II) and the ELCRA (Count IV), a plaintiff must show: (1) he engaged in a protected activity; (2) the protected activity was known by the employer; (3) the employer took an action that was materially adverse to him; and (4) a causal connection existed between the protected activity and the materially adverse action. *Jones v. Vilsack*, 861 F. App'x 58, 60–61, (6th Cir. 2021).

T-Mobile argues that this analysis should end before the Court even addresses these elements, because Plaintiff admits that T-Mobile did not retaliate against him and took no action against him because of any complaint he made. (ECF No. 37, PageID.850; ECF No. 37-3, PageID.1004). Plaintiff does not contest this.

Further, T-Mobile argues Plaintiff cannot establish a *prima facie* case of retaliation. (ECF No. 37, PageID.850). Specifically, T-Mobile argues Plaintiff cannot meet the first or fourth elements: (1) that Plaintiff engaged in any protected activity or (4) a causal connection existed between the protected activity and the materially adverse action. Plaintiff argues he meets both elements.

### a.  Whether Plaintiff Engaged in a Protected Activity

As to the first element, T-Mobile argues Plaintiff did not engage in any protected activity under Title VII or the ELCRA. The Sixth Circuit has previously held that "[a] request for an accommodation does not constitute protected activity under Title VII." *Smith v. COBX Co.*, No. 22-12836, 2023 U.S. Dist. 46442, at *5-6 (E.D. Mich. Mar. 20, 2023) (citing *Stanley v. ExpressJetAirlines, Inc.*, 808 F. App'x 351, 257 (6th Cir. 2020) (internal quotation marks omitted).

The Sixth Circuit has also held that because there is no obligation to accommodate religious beliefs under the ELCRA, a request for religious accommodation does not constitute protected activity under the ELCRA. *See Lucia v. Ford Motor Co.*, No. 12-15135, 2014 WL 902697, at *9 (E.D. Mich. Mar. 7, 2014) (Cox, J.) (citing *Dotson v. Norfolk Southern R.R. Co.*, 52 F.App'x. 655, 660 (6th Cir.2002) (to establish a *prima facie* case of retaliation, "The ELCRA, § 37.2701(a), specifically requires the plaintiff to demonstrate that '[plaintiff] opposed violations of the Act or participated in an activity protected by the Act….'")

Plaintiff argues he did engage in protected activity under Title VII and the ELCRA, and that the analysis is the same under both. (ECF No. 39, PageID.1447). In support, Plaintiff cites *Creusere v. Bd. of Educ. Of City Sch. Dist of Cincinnati*, 88 Fed. App'x 813, 821 (6th Cir. 2003), which states that "[Plaintiff] was clearly engaged in a protected activity by requesting religious accommodation". (ECF No. 39, PageID.1440). However, this argument has since been expressly rejected by both the Eastern District Court and the Sixth Circuit.[8] *See Garczynski v. Accident Fund Ins. Co.*, No. 22-CV-12615, 2023 WL 3437294, at *3 (E.D. Mich. May 12, 2023) (citing *Stanley*, 808 F. App'x at 257).

The Court therefore finds Plaintiff did not engage in a protected activity under Title VII or the ELCRA.

### b.  Causal Connection

Further, even if Plaintiff had not admitted T-Mobile did not retaliate against him, and even if requesting an accommodation was protected under Title VII or the ELCRA, T-Mobile argues Plaintiff still could not meet the fourth element that a causal connection existed. (ECF No. 37, PageID.852). A causal connection requires a showing that "but for" the protected activity, the

---

[8] Plaintiff's attorney is well aware of this decision as he served as the plaintiff's attorney in *Garczynski*.

materially adverse action would not have occurred. *MaceEachern v. Quicken Loans, Inc.*, No. 17-1005, 2017 WL 5466656, at \*5 (6th Cir. Oct. 17, 2017) (citing *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532–33 (2013). Here, T-Mobile argues there can be no causal connection because Plaintiff would have been suspended from employment for his failure to get vaccinated, regardless of whether he requested an accommodation. (ECF No. 37, PageID.852; ECF No. 37-3, PageID.999–1005).

Plaintiff argues that in the Sixth Circuit, "where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of [ELCRA] retaliation." *Smith v. Northstar Dining Chesterfield, LLC*, 2014 WL 4829591, at \*12 (E.D. Mich. Sept. 29, 2014) (citing *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir.2014)).

However, as stated above, a causal connection requires a showing that "but for" the protected activity, the materially adverse action would not have occurred. *MaceEachern*, No. 17-1005, 2017 WL at \*5. This, Plaintiff cannot show. Even if religious accommodation *was* a protected activity, Plaintiff cannot show that had he not requested the religious accommodation, he would not have been terminated from his position at T-Mobile. It is uncontested that Plaintiff was terminated for failing to get the COVID-19 vaccine, *not* for submitting a religious accommodation request.

The Court therefore finds Plaintiff cannot establish a *prima facie* case of retaliation under Title VII or the ELCRA. Defendant's Motion for Summary Judgment is therefore GRANTED as to Counts II and IV.

**CONCLUSION**

Accordingly, the Court ORDERS that:

- T-Mobile's Motion for Summary Judgment as to Count I is DENIED;

- Plaintiff's Motion for Partial Summary Judgment as to Count I is DENIED; and

- T-Mobile's Motion for Summary Judgment as to Counts II, III, and IV is GRANTED.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 27, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2024, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager